**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| HITCH ENTERPRISES, INC., <br> on behalf of itself <br> and all others similarly situated, <br><br> Plaintiff/Petitioner <br><br> v. <br><br> OXY USA Inc., <br><br> Defendant/Respondent | ) <br> ) <br> ) <br> ) <br> ) <br> )    No. 6:18-cv-01030-EFM-KGG <br> ) <br> ) <br> ) <br> ) <br> ) |

### DEFENDANT OXY USA, INC'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Oxy USA Inc. ("Oxy") files this motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff Hitch Enterprises, Inc.'s ("Plaintiff") claims for breach of contract based on deductions for processing fees for the period July 1, 2007 – January 11, 2013. These claims are barred by the statute of limitations. Oxy also moves for summary judgment on Plaintiff's claim for 10% interest on refunded Conservation Fees because no statute entitles Plaintiff to interest at that rate, and on Plaintiff's claim for payment on fuel used or lost in the field or by the plant because Oxy already paid royalties on these volumes.

### INTRODUCTION

Plaintiff brought this lawsuit against Oxy for alleged underpayment of royalties under an oil and gas lease. Plaintiff claims, among other things, that it was improperly charged deductions for processing fees for natural gas. Plaintiff asserts one cause of action, breach of contract, for the period of July 1, 2007 – April 1, 2014. Plaintiff's processing fee claims prior to January 11, 2013,

are barred by the statute of limitations.[1] The applicable statute of limitations for a breach of an oil and gas lease agreement is five years. Though Plaintiff has not established that equitable estoppel should toll the statute of limitations, even when applying equitable estoppel principles, the claims prior to January 11, 2013, are barred as a matter of law, and therefore summary judgment should be granted. In addition, there is no legal basis for Plaintiff's claim to 10% interest on refunded Conservation Fees, and Oxy is entitled to summary judgment as a matter of law. Finally, Plaintiff is simply incorrect about payment of royalties on gas used for fuel in the field or by the processing plant—Oxy has already paid royalties on those volumes, and Plaintiff is not entitled to a double payment. Oxy respectfully requests that the Court grant its Motion for Partial Summary Judgment on these claims.

## STATEMENT OF UNDISPUTED FACTS

1. The putative class in this case is defined as:

   > All royalty owners [sic] Kansas wells: (a) where OXY USA Inc. was the operator (or, as a non-operator, separately marketed gas); (b) who were paid royalties for production of gas, NGLs, or Helium from July 1, 2007 to April 30, 2014; and (c) whose gas was moved over the ONEOK/West Texas Gas/NNG lines to the Jayhawk Plant for processing. (Doc. 22, First Amended Class Action Petition, at ¶ 32).[2]

2. This case was first filed on January 11, 2018, in the Grant County District Court of Kansas. (Doc. 1, Defendant's Notice of Removal, Ex. 1, Plaintiff's Class Action Petition). Oxy removed the action to this Court on February 2, 2018. (Doc. 1, Defendant's Notice of Removal).

---

[1] Plaintiff also asserts other claims which are not the subject of this motion: royalty underpayment based on an higher index price rather than an internal affiliate price, royalty underpayment based on NGL recovery factors, and royalty underpayment by failure to obtain a Grade A Helium price for produce helium.

[2] Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); (2) all presiding judge(s) together with their immediate family members; and, (3) OXY USA Inc. its affiliates, its predecessors-in-interest, and their respective employees, officers, and directors. (Doc. 22, First Amended Class Action Petition, at ¶ 32).

3. Plaintiff was a class member in a previous lawsuit, *Opal Littell and Cherry Rider v. Oxy USA Inc.* ("*Littell*"), which settled claims similar to the claims in this lawsuit prior to July 1, 2007. (Ex. A, Plaintiff's Responses and Objections to Defendant's First Set of Discovery Requests, pg.10).

4. The instant case pursues similar claims to *Littell* with the same underlying facts for the period from July 2007 – April 1, 2014. (Doc. 22, First Amended Class Action Petition, at ¶ 1). *Littell* was settled on January 18, 2007. (Ex. B, Notice Order, Ex. A, Stipulation of Settlement). Plaintiff was mailed a Notice Order in *Littell* on January 24, 2008. (Ex. C, Affidavit of Mailing of Notice Order, pg. 554).

5. Plaintiff's royalty owner number is 406227. (Doc. 34, Plaintiff's Brief in Support of Class Certification, Ex. B-13, Oxy Pay Decks; Ex. E, Del Rio Decl. at ¶ 6). Plaintiff received a *Littell* class settlement payment on or around February 5, 2009. (Ex. D, Notice of Filing of Final Payment Schedule After Disposition of Appeal, pg. 69).

6. Oxy paid royalties to Plaintiff on the wellhead volumes of gas, volumes that include any fuel used or lost downstream of the wellhead. (Ex. E, Del Rio Decl. at ¶ 7).

## ARGUMENT

### I.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Bank v. Par.*, 298 Kan. 755, 759, 317 P.3d 750, 753 (2014). The Court must view all facts and inferences reasonably drawn from the evidence in favor of the non-moving party. *Morales v. McKesson Health Sols.*, LLC, 136 F. App'x 115, 117 (10th Cir. 2005). The movant bears the initial burden of demonstrating the lack of a genuine issue of material fact, but once this burden is

met, the burden shifts to the non-movant who must "go beyond the pleadings to 'set forth specific facts' that would be admissible in evidence" to defeat summary judgment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

**II.    Plaintiff's Processing Fee Claims prior to January 11, 2013, are barred by the statute of limitations.**

### A.    The applicable statute of limitations for breach of contract based on an oil and gas lease agreement is five years.

Statutes of limitations and tolling rules are governed by state law unless the tolling rules are inconsistent with federal law or policy. *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632–33 (10th Cir. 1993). Under Kansas law, the five-year statute of limitations for written contracts under K.S.A. 60-511 applies to class action royalty lawsuits. *Smith v. Amoco Production Co.*, 272 Kan. 58, 75, 31 P.3d 255, 268 (2001). Generally, a cause of action accrues and starts the statute of limitations once the right to maintain a legal action arises. *Pancake House, Inc. v. Redmond By & Through Redmond*, 239 Kan. 83, 87, 716 P.2d 575, 579 (1986). In this case, Plaintiff asserts a sole breach of contract claim for the period of July 1, 2007 – April 1, 2014, based on an oil and gas lease agreement. (Doc. 22, First Amended Class Action Petition, at ¶¶ 40-44). Oxy's obligation to pay royalty monthly under the lease agreement (Ex. E, Del Rio Decl. at ¶ 4) makes the lease a continuing contract, which provides a separate cause of action for each breach of an obligation to make payments.[3] *G.N. Rupe v. Triton Oil & Gas Corp.*, 806 F. Supp. 1495, 1498 (D. Kan. 1992). Accordingly, Plaintiff's claims for underpayment based on processing fee deductions accrued each time an alleged underpayment was made. Thus, all claims that accrued

---

[3] Under the continuing contracts doctrine, each cause of action based on a royalty underpayment would accrue from the date of each payment, as opposed to the date of the first breach. For instance, the statute of limitations for a royalty payment due on April 1, 2014, would expire on April 1, 2019, even if there had been previous breaches of the same nature.

4

more than five years before Plaintiff filed suit on January 11, 2018, are barred—that is, all claims prior to January 11, 2013.

### B. The fraudulent concealment doctrine does not apply in this case to toll the statute of limitations.

The fraudulent concealment tolling doctrine does not apply in this case because Plaintiff's claims are for breach of contract—not fraud. In order to establish fraudulent concealment to toll the statute of limitations, the Kansas Supreme Court has recently held that the plaintiff's claim for relief must be "validly grounded in fraud on its face." *Bonin v. Vannaman*, 261 Kan. 199, 207, 929 P.2d 754, 762 (1996). Fraudulent concealment cannot be used to toll the statute of limitations for breach of contract claims. *Freebird, Inc. v. Merit Energy Co.*, 883 F. Supp. 2d 1026, 1036 (D. Kan. 2012) ("Although the Kansas Supreme Court has not been entirely consistent in applying the fraudulent concealment doctrine to toll the statute of limitations, it has repeatedly and most recently held that it only tolls the statute of limitations on fraud claims."). Thus, the fraudulent concealment doctrine does not toll the statute of limitations for Plaintiff's breach of contract claim as a matter of law.

### C. Plaintiff cannot establish that equitable estoppel applies to toll the statute of limitations.

To prove equitable estoppel, the plaintiff must demonstrate that (1) the defendant had material information that the plaintiff did not have and remained silent, (2) the defendant's silence *caused* the plaintiff not to file suit timely, and (3) in the absence of a fiduciary or confidential relationship, the plaintiff could not have learned of the cause of action through reasonable diligence. *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632–33 (10th Cir. 1993); *Friends Univ. v. W. R. Grace & Co.*, 227 Kan. 559, 564, 608 P.2d 936, 941 (1980) ("Where the defendant does not occupy a fiduciary or confidential relationship toward the plaintiff, neither affirmative nor passive conduct of the defendant will constitute such a concealment as to prevent the running

5

of the statute of limitations, where through reasonable diligence on his part he could have learned of the existence of his cause of action. It has accordingly been held that the party seeking to toll the statute of limitations must explain why due diligence did not lead or could not have led to discovery of the facts and the cause of action."). Plaintiff cannot meet this burden. Not only did Oxy tell Plaintiff directly about its payment practices on at least one occasion, Plaintiff did not undertake *any* diligence to discover its claims.

> *1.   Plaintiff cannot establish the first element of equitable estoppel because Oxy was not silent about the material facts underlying Plaintiff's claims and provided Plaintiff with this information through the Littell Settlement Notice.*

Even assuming that equitable estoppel tolled the statute of limitations prior to the *Littell* Settlement Notice, Plaintiff's processing fee claims began to accrue, *at the latest*, once the *Littell* Notice Order was issued, barring claims prior to January 11, 2013. After that point, Plaintiff cannot establish the first element for equitable estoppel because Oxy explicitly told Plaintiff about its processing fee practices through the *Littell* Settlement Notice. The Notice Order in *Littell* states:

> Nothing contained in the Settlement Agreement is intended to alter or restrict OXY's ongoing practice of charging the accounts of its royalty owners with a pro-rata share of the fees and costs which it incurs to process the gas in a processing plant and to transport it on mainline transmission pipelines under approved FERC tariffs, so long as such royalty owners continue to receive the benefits of such activities in the form of their allocated share of the proceeds of sale received by OXY for the natural gas liquids, helium or other extracted products and the residue gas which is sold after such transportation and processing occur. (Ex. B, Notice Order, Ex. C, Notice of Proposed Settlement of Class Action).

Here, the Notice Order *explicitly references* Oxy's practice of deducting fees for processing. Thus, not only did Oxy not "remain silent" about the material information underlying Plaintiff's claim, the Notice Order gave Plaintiff *actual knowledge* about the practices that underlie its claims. The Notice Order was mailed to Plaintiff on or around January 24, 2008. (Ex. C, Affidavit of Mailing of Notice Order). Plaintiff's receipt of the *Littell* Notice Order, having

6

provided Plaintiff with the material knowledge underlying its current claim, marked the point at which the statute of limitations would resume after being tolled for equitable estoppel.

Because the *Littell* Notice Order was issued on January 24, 2008, the statute of limitations on Plaintiff's royalty payment claims beginning on July 1, 2007, began to run at this point. Thus, even applying equitable estoppel principles to the period prior to the *Littell* Notice Order, Plaintiff's breach of contract claims for processing fees prior to **January 11, 2013**, are barred by the statute of limitations.

> *2.     Plaintiff cannot establish the third element of equitable estoppel because the material facts underlying Plaintiff's claims could have been discovered through due diligence.*

Further, Plaintiff cannot establish the third element of equitable estoppel because it could have discovered the material facts underlying its claim through the exercise of due diligence. *Freebird* is instructive in this regard. In that case, the plaintiff brought a putative class action for royalty underpayment on natural gas through improper accounting methods. *Freebird*, 883 F. Supp. 2d at 1028. The defendant moved for summary judgment based on the statute of limitations. *Id.* The plaintiff argued that equitable estoppel should apply to toll the statute of limitations because the relevant information needed to ascertain the deductions taken was not displayed on the plaintiff's check stubs. *Id*. at 1036.

In analyzing whether this fact established that the plaintiff could not have ascertained the relevant material knowledge through the exercise of due diligence, the court noted that Kansas law provides royalty owners a right to "detailed information about their leases, wells and royalty payments, including 'the amount and purpose of any other deductions or adjustments from the royalty owner's share of the sale of oil and gas not identified on the payment statement.'" *Id.* at 1037 (quoting K.S.A. § 55-1622(a)(5)). The court found that the plaintiff could have exercised due diligence by demanding detailed information as provided in K.S.A. § 55-1622 but failed to do

so, and if it had taken just this basic step, it could potentially have discovered the facts that gave rise to its cause of action. *Id.* The court granted summary judgment on the limitations defense. *Id.*

Similar to the *Freebird* case, Plaintiff here has not established and cannot establish that the information that gave rise to its claims could not have been discovered through the exercise of due diligence. The check stubs that Plaintiff received contained information regarding deductions, including the deductions complained of in this case. (Doc. 34, Plaintiff's Brief in Support of Class Certification, Ex. A-13, Check Stub; Ex. E, Del Rio Decl. at ¶ 5). Plaintiff has never communicated with Oxy regarding its royalty payments, nor has it ever requested information from Oxy regarding the calculation of royalty. (Ex. A, Plaintiff's Objections and Responses to Defendant Oxy USA Inc.'s First Set of Discovery Requests). Had Plaintiff requested information regarding its royalty payments under K.S.A. § 55-1622, it would have been able to discover the material facts underlying its claims. To defeat summary judgment, Plaintiff must provide evidence as to why due diligence would not have led it to ascertain the material knowledge underlying the basis of its claims, which it is unable to do. Because of this, equitable estoppel does not apply to toll the statute of limitations for its breach of contract claim for deductions taken for processing fees.

Because neither the equitable estoppel nor fraudulent concealment doctrine toll the statute of limitations, the statute of limitations for a breach of obligation to make a royalty payment bars the majority of Plaintiff's claims. Thus, because Plaintiff cannot provide any evidence that would toll the statute of limitations, Plaintiff's claims for breach of contract for deductions taken for processing fees prior to **January 11, 2013**, are barred by the statute of limitations.

**III.     As a matter of law, Plaintiff is not entitled to 10% interest on refunded Conservation Fees.**

In Paragraph 24 of its First Amended Complaint, Plaintiff asserts that Oxy refunded Conservation Fees that it had deducted in 2012 without paying interest, and that Plaintiff is entitled to "interest on refunded amounts at the full 10% per annum interest." Plaintiff's claim appears to be based on K.S.A. 16-201, the general statute providing for interest on amounts due under a contract. To the extent Plaintiff is entitled to interest at all (which Oxy does not concede), the proper statute is K.S.A. 55-1615, which states that any person entitled to revenues from the first sale of oil or gas from a Kansas well is entitled to "interest on any payment, other than excluded payments." K.S.A. 55-1615. In *Roderick v. XTO Energy, Inc.*, 08-1330-EFM-GEB, 2016 WL 4039641, at *11-12 (D. Kan. July 28, 2016) (Melgren, J.), this Court specifically held that K.S.A. 55-1615, not K.S.A. 16-201, applies to interest on Conservation Fees that were improperly deducted from royalty payments and then refunded.

K.S.A. 55-1614, which provides the definitions of the terms used in K.S.A. 55-1615, defines the "interest rate provided herein" that is applied in K.S.A. 55-1615 as:

> [T]hat rate equal to one and one-half percentage points above the interest rate charged on loans to depository institutions by the New York Federal Reserve Bank at the start of business on the first business day of each month, unless the payor segregates the payment from its operating funds and deposits the same in a demand deposit account with a federally insured bank or savings and loan institution that earns interest at the highest rate being offered by that institution for the amount due payee by payor in such account, in which case the "interest rate provided herein" means the interest rate actually earned by payor on that account.

K.S.A. 55-1614(h). This rate would be significantly less than the 10% claimed by Plaintiff, but in any event, Plaintiff has not asserted a claim under this statute. Because no statute entitles Plaintiff to 10% interest on refunded Conservation Fees, Oxy is entitled to summary judgment on this claim.

9

**IV.     Plaintiff's claims for "field fuel" or "plant fuel" should be dismissed because Oxy paid Plaintiff based on wellhead volumes, which include all fuel used or lost in the field or by the plant.**

Plaintiff also claims that Oxy took "Residue Gas processing deductions" in the form of "plant fuel"—allowing the processing plant to use part of the gas for fuel. The expert report attached to Plaintiff's motion for class certification also calculates damages for fuel used or lost in the field or by the plant. However, Oxy actually paid Plaintiff for all fuel used or lost. Oxy paid Plaintiff based on wellhead MMBtus, which measure the volume of gas before any field or plant use or loss. *See* Ex. E, Del Rio Decl. at ¶ 7). Plaintiff has no evidence that Oxy failed to pay royalties on volumes used for fuel or lost between the wellhead and the tailgate of the plant. Accordingly, Oxy is entitled to summary judgment on Plaintiff's claims for royalties on fuel used or lost.

## CONCLUSION

For the reasons stated herein, Oxy USA Inc. respectfully requests that the Court grant this Motion for Partial Summary Judgment in full, that summary judgment be entered on Plaintiff's (1) breach of contract claims prior to **January 11, 2013**, (2) claims for interest on refunded Conservation Fees, and (3) claims for payment of royalties on fuel used or lost in the field or by the processing plant, and that such claims be dismissed with prejudice.

Dated: March 11, 2019

        Respectfully Submitted,

        FOULSTON SIEFKIN LLP

        *s/ s/ James M. Armstrong*
        James M. Armstrong
        State Bar No. 09271
        Mikel L. Stout
        State Bar No. 05811
        1551 N. Waterfront Parkway, Suite 100
        Wichita, KS 67206-4466
        Phone: (316) 291-9516
        Fax:  (316) 267-6345
        jarmstrong@foulston.com
        mstout@foulston.com

        **Attorneys for OXY USA, Inc.**

**OF COUNSEL**

Mark C. Rodriguez, TX Bar No. 00794554 (admitted *pro hac vice*)
Deborah C. Milner, TX Bar No. 24065761 (admitted *pro hac vice*)
Aurra M. Fellows, TX Bar No. 24101742 (admitted *pro hac vice*)
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, TX 77002
Tel:   (713) 758-3288
Fax:  (713) 615-5314
Email:   mrodriguez@velaw.com
Email:   cmilner@velaw.com
Email:   afellows@velaw.com

## CERTIFICATE OF SERVICE

       I hereby certify that on the 11th day of March, 2019, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to the following:

Rex A. Sharp
Barbara C. Frankland
Ryan C. Hudson
Scott B. Goodger
REX SHARP, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
***Attorneys for Plaintiff***

                                                             *s/ James M. Armstrong*
                                                             James M. Armstrong